THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOSEPH WALSH,

    Plaintiff,

v.

CITY OF PORTLAND, et al.,

    Defendants

No. 3:17-cv-01899-PK

**OPINION AND ORDER**

**PAPAK, Magistrate Judge:**

Pro se Plaintiff Joseph Walsh brings this civil rights action against Defendants City of Portland, Mayor Ted Wheeler, and the Portland Police Bureau, alleging that Defendants violated his First Amendment rights during a protest on June 4, 2017, in downtown Portland. Defendants previously moved to dismiss the Complaint for failure to state a claim. I granted Defendants' motion with prejudice as to the Portland Police Bureau, and without prejudice as to Wheeler and the City of Portland, and allowed Plaintiff leave to file an amended complaint. Order, ECF No. 22.

Plaintiff has filed a document entitled, "Response to Judge's Order concerning Plaintiff's amended complaint correcting the deficiencies noted in the Court's Order." ECF No. 24. I construe this document as Plaintiff's Amended Complaint. ECF No. 26.

Defendants now move to dismiss the Amended Complaint. ECF No. 25. Plaintiff has not responded. I grant the Motion to Dismiss with prejudice.

## BACKGROUND

An amended complaint generally supersedes the original complaint. *See Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). However, because here Plaintiff represents himself and has not formally moved to amend the original Complaint, I treat Plaintiff's filings, including the initial Complaint, response brief, and Amended Complaint, as comprising one complaint.

In his initial Complaint, Plaintiff alleges:

On June 4, 2017, I attended a large protest located in Chapman Park, Lowsdale Park and in front of City Hall.[1] I am a 75 yr. old veteran who is on 24/7 oxygen and is in poor health. I was attacked without notice by the Portland police using unknown chemical weapons. I had to be removed from the park before permanent damage was done to me.

Compl. 5, ECF No. 2.

In his response brief, Plaintiff alleges:

The first indication that I had that something was wrong was a cloud of smoke coming towards us from Terry Shrunk Park[2] which was across the street from where we were sitting on the benches. I was pulled out of the park by Malcolm

---

[1] Defendants state that Plaintiff is apparently referring to Chapman Square and Lownsdale Square. Defs.' Mot. Dismiss 2 n.1, ECF No. 15.

[2] Defendants state that they "assume that Plaintiff is referring to Terry Schrunk Plaza, which is located across SW Madison St. from Chapman Square." Defs.' Reply 2 n.2.

> Chaddock who was in a panic because he feared for my health. We went two
> blocks to 4th Avenue and Mr. Chaddock got his private truck and took me out of
> the area. I was shaken and wondered for the next few days what would be the
> result of being exposed to this chemical. As we departed the park the police fired
> rubber bullets and used concussion grenades. We were all now terrified that we
> would be arrested or seriously injured by the actions of the police.

Pl.'s Resp. 3 (unpaginated document), ECF No. 19. In the Amended Complaint, Plaintiff states that "the police" "did attack me and others as we sat on a bark bench." Am. Compl. 4 (unpaginated document). Plaintiff further states,

> The fact that a friend dragged me out of the park and up two blocks to get out of
> the way of the tear gas and whatever chemicals the police deployed should not be
> used as a viable defense. The fact that I did not show immediate damage should
> not be used to say I was not hurt or there is no claim. The psychological effects
> alone have been intense. I rarely leave my home now and only attend meetings
> that would appear safe from the police, City Counsel and County Commissioner
> hearings. If I do attend a protest, as soon as the robo cops arrive I leave . . . .

Am. Compl. 4. Plaintiff also states, "My ability to walk has diminished to such an extent that walking 100 ft without stopping is difficult. . . . . The running of the two blocks was monumental for me and did permanent damage to my lungs." Am. Compl. 4. Plaintiff states that he "will produce medical evidence" that he "now [worries] each time [he goes] out." Am. Compl. 4.

As to Wheeler, in the Amended Complaint, Plaintiff alleges that during the protest, Wheeler "was in the Command Center" acting both as mayor and the commissioner of police. Am. Compl. 1. Plaintiff alleges that Wheeler refused "to issue a permit to the Patriot Prayer group," which according to Plaintiff shows Wheeler's bias. Am Compl. 2. Plaintiff does not, however, allege that he is associated with the Patriot Prayer group. Plaintiff asserts that "even if [Wheeler] told all in the Command Center that he was there to observe, as Mayor and Police

Commissioner he had an obligation to stop any act that would violate the very oath he took when he became the Mayor of Portland." Am. Compl. 2.

As to the City of Portland (the City), Plaintiff quotes the City Charter on police conduct during demonstrations. Am. Compl. 3. Plaintiff asserts that the police and the City violated the Charter's guidelines for police conduct, including by the use of "chemical agents" without giving Plaintiff "proper notice." Am. Compl. 4, 5.

For relief, Plaintiff seeks "a permanent injunction against the City of Portland in the use of chemical warfare against their citizens." Compl. 6. Plaintiff also seeks $500,000 in damages "because of the severity of the action taken by the" Portland Police Bureau." Compl. 6.

## MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). A complaint that fails to comply with Rule 8 is subject to dismissal under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To show plausibility, the plaintiff must do more than show "a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept a complaint's legal conclusions. *Id.* "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Chubb Custom Ins. Co. v. Space Sys./Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 680-81. Even under the

liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The court should construe the pleadings of a pro se litigant more leniently than those drafted by a lawyer. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "'Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (alteration in *Garity*)). However, when construing a pro se litigant's pleading, the court "may not supply essential elements" of a claim that were not pleaded. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) (citation and quotation marks omitted).

## DISCUSSION

As I did in my prior order, I construe Plaintiff's civil rights claims as being brought under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff cites the First Amendment, which protects activities such as demonstrations and

protest marches. *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). To establish a violation of the First Amendment, a plaintiff must show: "(1) he engaged in activity that is constitutionally protected; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir.2010) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

## I. Wheeler

### A. Official Capacity

In the prior order, I concluded that Wheeler should be dismissed as a defendant to the extent that he is named in his official capacity as mayor and police commissioner. Order 5. Plaintiff's Amended Complaint includes further allegations that Wheeler was acting in his official capacity as both mayor and commissioner of police. I adhere to my conclusion that Plaintiff's official capacity claim against Wheeler must be dismissed because Plaintiff names the City as a defendant. *See Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal.1996) ("if individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed"); *Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded.").

### B. Individual Capacity

Plaintiff also brings a claim against Wheeler in Wheeler's individual capacity. In the

prior order, I concluded that Plaintiff had not stated a claim against Wheeler in his individual capacity. After reviewing Amended Complaint, I conclude that Plaintiff has not cured the defects noted in my prior order, so dismissal of his individual capacity claims against Wheeler must be with prejudice.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676. Courts have found supervisors liable under § 1983 when "the supervisor 'was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Edgerly v. City and Cty. of San Francisco*, 599 F.3d 946, 961 (9th Cir.2010) (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (further citation omitted)). However, "the mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) (quotation marks and citation omitted). To survive a motion to dismiss, the plaintiff's allegations "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

This court must dismiss civil rights claims against a supervising official if the plaintiff fails to allege specifically how the supervisor violated his or her rights. For example, in an action brought by protestors alleging that law enforcement officers used excessive force against them, the Ninth Circuit dismissed the protestors' claims against two supervisors (the superintendent of the Oregon State Police (OSP) and the regional captain of the OSP), explaining that the

"protestors make no allegation that the supervisors took any specific action resulting in the use of excessive force by police officers on the scene of the anti-Bush demonstration." *Moss v. U.S. Secret Serv.*, 711 F.3d 941, 968 (9th Cir. 2013) (*Moss*), *rev'd on other grounds sub nom. Wood v. Moss*, 572 U.S. 744 (2014); *see also Alvarez-Orellana v. City of Antioch*, No. C-12-4693, 2013 WL 3989300, at *6 (N.D. Cal. Aug. 2, 2013) (rejecting the plaintiffs' "conclusory allegations that [the sheriff] knew or should have known that his subordinates were engaging in a pattern or practice of not complying" with the law).

Here, Plaintiff argues that discovery "will show the court that Wheeler was intimately involved with most, if not all the decisions that were made concerning the policing of the protest on June 4th, 2017." Am. Compl. 1. Plaintiff asserts that Wheeler "should have prevented the deployment of any chemical weapons against non-violent protesters." Am. Compl. 2.

Plaintiff's Amended Complaint, considered with his other pleadings, does not specifically allege that Wheeler personally took part in the alleged deprivation of his rights, or that Wheeler knew of the alleged deprivations and failed to prevent them. Aside from his speculation about what discovery might reveal, Plaintiff has alleged only that Wheeler was present in the "command center" on the day of the protest. Plaintiff's conclusory allegations do not meet the standards set by *Twombly* and *Iqbal* to survive a motion to dismiss and allow a plaintiff to proceed with discovery. The Supreme Court has explained that Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. In *Moss*, the court ruled that a plaintiff's allegations must be more than "merely recitations of the *organizational* role of [the]

supervisors." 711 F.3d at 968. Here, as was true in *Moss*, Plaintiff makes "no allegation that the supervisors took any specific action resulting in the use of excessive force by police officers on the scene." *Id.* "It is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging 'a specific policy' or 'a specific event' instigated by them that led to the constitutional violations." *Cox v. California Forensic Med. Grp.*, No. 14-cv-04662-KAW, 2015 WL 237905, at *1 (N.D. Cal. Jan. 14, 2015) (quoting *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012)). Furthermore, for the reasons discussed below, Wheeler cannot be liable as a supervisor when Plaintiff has failed to state a claim that his constitutional rights were violated. Even if Plaintiff could show that Wheeler approved the use of tear gas, Plaintiff himself was not exposed to tear gas or any other alleged police ordnance. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) (supervisor cannot be liable under § 1983 when no constitutional violation occurred). I conclude that Plaintiff's claim against Wheeler must be dismissed with prejudice because allowing further amendments would be futile.

## II. City of Portland

Plaintiff names the City as a defendant. In this court's prior order, I dismissed Plaintiff's claim against the City without prejudice.

In addition to the allegations in the original Complaint and the response brief, Plaintiff's Amended Complaint alleges that he suffered psychological and physical harm after running two blocks to avoid smoke. However, other than conclusory statements, Plaintiff does not allege that police officers attacked him personally or threatened to do so, or that he was ever exposed to tear gas or any other ordnance. Without specific allegations that he suffered injury or the imminent

threat of injury at the hands of the police, Plaintiff's conclusory allegation that police "did attack me and others as we sat on a park bench" does not state a claim. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) ("the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged"). Nor can Plaintiff, a non-lawyer, assert the rights of other protesters who were allegedly exposed to tear gas or other chemicals. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008); *see also Jackson*, 268 F.3d at 653 n.4 ("Because Jackson was not a witness to, nor involved in, this specific incident, she does not have standing to assert this claim and cannot competently testify that it even occurred."). Plaintiff's speculative and subjective fears of future police actions against protesters are not sufficient to support his claim for injunctive relief against the City. *See Laird*, 408 U.S. at 13-14 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . .").

Plaintiff's Amended Complaint quotes City policies on police conduct, and alleges that police officers' "disregard for their own rules and regulations worked out over years of monitoring by the Dept. of Justice for excessive force was evident throughout the day. After my escape the PPB arrested and held over 300 citizens in what is called a kettle." Am. Compl. 5.[3] Plaintiff's Amended Complaint also alleges that the police "directed their actions against me because I was in their way and they were going to remove me one way or the other." Am. Compl. 5.

---

[3] As Plaintiff notes, the so-called "kettling" of protestors by Portland police at the June 4, 2017, demonstration is the subject of a class action lawsuit. *Haber v. City of Portland*, No. 3:17-cv-01827-JR.

Plaintiff's allegations in the Amended Complaint do not cure the deficiencies noted in this court's prior order. By his own account, Plaintiff was blocks away from the alleged incidents of excessive force. I conclude that allowing Plaintiff to file a second amended complaint to cure the defects in his pleadings would be futile. Defendants' Motion to Dismiss the Amended Complaint must be granted with prejudice.

## CONCLUSION

Defendants' Motion to Dismiss Amended Complaint, ECF No. 25, is GRANTED with prejudice.

Dated this 30th day of October, 2018.

_____
Honorable Paul Papak
United States Magistrate Judge